8752

LITTLE v. GRAND LODGE KNIGHTS OF PYTHIAS.

INSURANCE—BENEFIT SOCIETIES—ISSUES—WAIVER.—Where a benefit lodge sets up the defense that the beneficiary is not entitled to recover because the member violated the endowment law by living in concubinage, and the evidence shows that the order with knowledge of this relation instructed the legal wife to proceed in a particular way and the benefit would be paid her, and the Grand Lodge approved this action, but that the wife did not strictly comply with the instructions, whether the order waived strict compliance on her part is for the jury.

Before ERNEST GARY, J., Richland, June, 1912. Affirmed.

Action by Robert Little, administrator of W. A. Key and Susan Duncan Key, against Grand Lodge Knights of Pythias of South Carolina.

Defendant appeals on the following exceptions:

1. "That his Honor erred in charging the jury as follows: 'Plaintiff contends that they waived that (*i. e.*, "strict compliance,") and have no right to charge that, when they themselves have waived forfeiture that it does not lie in them to now assert that the policy is forfeited for the reason that they waived it; the contention being that while he was a member in good standing they received his dues monthly; that they were in possession of the manner in which they were living at the time and received his dues on it. If they knew he was living in a state of concubinage, in violation of the terms of his contract, the proper thing would be to cancel the policy, not take his dues on the one side and hold him to that claim.'

"The error being that there was no testimony that either the Grand Lodge, the subordinate lodge, or any of the officers or members of either lodge had any knowledge of the manner in which the deceased was living, and that there was no testimony of any nature on which the statement of his Honor, the trial Judge, to the effect that dues were received after defendant's knowledge of the manner in which Key was living, could be based.

2. "That his Honor erred in charging as follows: 'You take into consideration whether or not they have waived a strict compliance on his part to live up to the terms of his contract.'

"The error being that there was no testimony on which knowledge of the manner in which Key was living could be imputed to the Grand Lodge or the subordinate lodge or to any officer or member of either lodge, and, therefore, there could be no waiver of a fact of which there was no knowledge.

3. "That his Honor erred in charging the jury as follows: 'After a thorough investigation it was learned that said member (Key) was lawfully married to Susan Duncan at Barnwell, S. C., April 13, 1892, etc.'

"The error being that there being testimony as to two alleged wives in the case, the above reference was a charge on the facts, and hence unconstitutional and prejudicial to this appellant.

4. "That his Honor erred in charging the jury as follows: 'Say I have some property in another county and write to Mr. Seibels here to renew the policy. When I get policy I will look on it. It had "All flues and chimneys in this building must be made of brick and stone from the ground up, or else the policy is forfeited in case of loss;" I write a letter that my building is not so constructed. That in the kitchen I have a swing flue not built from the ground up, and brought his attention to this fact. I brought their attention to that fact. If they do not insist on brick, they will waive their right to insist on it in case of loss. I have notified them; they will know now when they get my letter that I did not mean to represent that the building had flues connected from the ground up; if I had let it alone or left them in ignorance and a fire occurred, I do not know that I could go before a jury and say that was a waiver. The law is binding on the parties unless waived, and it is for the jury to say whether waived or not.'

"The error being that the illustration used by his Honor was not applicable to the points at issue in the case at bar, in that there was no testimony of any nature that Key had called to the defendant's attention the fact that he was married to Susan Duncan; and, further, because the jury gathered from the illustration that his Honor, the presiding Judge, was referring to his own personal affairs, in which he had had trouble about the construction of the contract, that he was against forfeitures and that, therefore, the defendant was greatly prejudiced.

5. "That his Honor erred in charging the jury as follows: 'Now, I tried a case in Charleston in one of these similar orders, where the policy specified if a member did not pay every month, or if he was in arrears three months,

he could not renew without joining over again, and the proof showed he would wait over that length of time and go to pay; they would receive his fund and he did not pay every month; that by accepting payment the company waived its right to demand forfeiture.'

"The error being that the defendant had no knowledge of any cause of forfeiture prior to the time of Key's death, and could not, therefore, have accepted dues in a manner so as to bring about a waiver.

6. "That his Honor erred in refusing to charge the following request of the defendant: 'I charge you that any act which is claimed by the plaintiff herein to have been a waiver of section 7 of said endowment law must be strictly construed, and that if the plaintiff had not complied with the terms thereof that she cannot recover.'

"The error being: (a) that the proposition of law as stated was a correct one, and applicable to the facts of the case and the issues raised by the pleadings, and was not covered by his Honor in his general charge; (b) that the by-law making living in a state of concubinage a cause of forfeiture, was a reasonable one, by which the plaintiff, and those claiming through him, were bound.

7. "That his Honor erred in refusing the motion for a new trial, the error being that since there was no testimony of any nature whatsoever on which waiver of the contract could be based, that, as a matter of right, the defendants were entitled to a new trial.

8. "That his Honor erred in reading to the jury letters which had been offered in testimony, the error being that, under the Constitution of South Carolina, he had no right to state any of the testimony.

9. "That his Honor erred in refusing defendant's motion for nonsuit at the conclusion of the plaintiff's testimony, and for the direction of a verdict at the close of all the testimony, on the ground that the undisputed testimony showed but one conclusion, and that was that the

party through whom the benefit was claimed, viz., W. A. Key, was at the time of his death living in a state of concubinage, in violation of section 7 of the endowment law; the error being, it is respectfully submitted, that the undisputed testimony showed the existence of such fact, and that neither the letter from T. H. Henry, grand chancellor, to Mr. Cobb, attorney for plaintiff, nor the report made by the said grand chancellor to the Grand Lodge and the action taken thereon by the Grand Lodge, both said letter and report, and said action being construed by his Honor as a waiver; whereas neither said letter, nor said report and action thereon constituted a waiver in law, and that in so ruling his Honor overlooked the following principle governing waiver and the following facts as shown by the testimony:

(1) "That there was no testimony showing that at any time during the life of said W. A. Key, said defendant, or any of its duly authorized officers, knew that said W. A. Key was living in a state of concubinage.

(2) "That the policy of insurance constituted a contracted relation between the insured and the insurer, and that any waiver of policy provisions to affect adversely the rights of the insurer must take place during the life of the insured so as to constitute a changed relationship from that existing under a strict compliance with the terms of the policy, and there is no testimony showing such waiver, but, on the other hand, the undisputed testimony showed that the defendant did not know of the violation of the policy provision until subsequent to the death of the insured."

*Messrs. Shand, Benet, Shand & McGowan* and *Logan & Edmunds,* for appellant, cite: *There can be no waiver of this forfeiture:* 29 Ency. 1093; 84 S. C. 97; 88 S. C. 222. *Court charged on facts by reading letter to jury:* 47 S. C.

489. *Acts claimed to be waiver must be strictly construed:* 80 S. C. 154.

*Messrs. Robert Moorman, Hunter A. Gibbes* and *W. Hampton Cobb,* contra. *Mr. Gibbes* cites: *Policy vests in beneficiary:* 77 S. C. 300; 87 S. C. 399. *Waiver as applied to life policies:* 55 S. C. 1; 67 S. C. 399; 37 S. C. 417; 51 S. C. 540; 78 S. C. 388; 57 S. C. 358; 60 S. C. 477; 15 S. C. 35; 46 S. C. 92; 29 S. C. 560; 88 S. C. 31; 78 S. C. 444; 54 S. C. 683; 70 S. C. 16. *Forfeitures are not favored:* 143 U. S. 496; 51 S. C. 547; 96 U. S. 242; 51 S. C. 180.

March 18, 1914. The opinion of the Court was delivered by

MR. CHIEF JUSTICE GARY. This is an action upon a policy of insurance.

The complaint alleges, that on or about the — day of January, 1905, the defendant issued its policy of insurance on the life of W. A. Key, whereby it agreed to pay to his widow, legal heirs or representatives, the sum of three hundred dollars, should his death occur during his fourth year's membership.

That W. A. Key died on the 25th of October, 1908, in good standing.

That the plaintiff, Susan Duncan Key, is the widow of the said W. A. Key, and is entitled as such, to the sum of three hundred dollars.

The defendant, in its answer, denied the allegations that W. A. Key died in good standing in said lodge, during his fourth year's membership therein; and, by way of defense, alleged, that section 7 of the Endowment Law provides, that "any member living in a state of concubinage at the time of death, shall not be entitled to any of the benefits herein mentioned;" and that the deceased, at the time of his death, was living in a state of concubinage with a

woman whom he represented as his wife, although he then had a lawful wife.

The jury rendered a verdict in favor of the plaintiff, for the sum of $300.00 interest and costs, and the defendant appealed upon exceptions, which will be reported.

The first question that will be considered is, whether there was error in refusing the motion for nonsuit.

The grounds of the motion and the reasons assigned by his Honor, the presiding Judge, for refusing it, are as follows:

"Mr. Edmunds: We move for a nonsuit. The undisputed testimony shows but one conclusion, that is, that the party through whom the benefit is claimed, W. A. Key, was, at the time of his death, living in a state of concubinage, in violation of section 7 of the Endowment Law, which we have put in evidence.

"The Court: Here is a letter from Henry, office of Grand Chancellor, Grand Lodge, Knights of Pythias, to Mr. Cobb: 'Dear Sir: Replying to yours of the 11th inst., relative to the claim of the late W. A. Key, beg to advise that we have found the lawful wife of said member, and have informed her what steps to take as his widow, in order to collect the claim; when she complies with instructions, claim will be paid.'

"When the Grand Lodge met in Beaufort, here is what took place—I only read that part of the message that refers to this claim—'Claim No. A. W. A. Key, of Columbia Lodge No. 11., Columbia. Amount $300.00. Claims for the above sum have been presented by two wives, both claiming to have been the legal wife of the deceased. After a thorough investigation it was learned, that said member was lawfully married to Susan Duncan at Barnwell, S. C., April 13, 1892, and the second contract entered into in Columbia, S. C., April 23, 1902. Under the laws of South Carolina, the second marriage is void for the reason that the first wife is yet alive. The

first wife, Susan Key, by name, has been directed to secure letters of administration from the judge of probate of Richland county in behalf of herself and children, and when she complies with instructions claim will be paid.'

"That message was referred to a committee, and that committee reported: 'The committee on grand chancellor's report begs leave to make the following report: We have examined carefully the report, and wish to commend it for the comprehensive manner in which the affairs of the order for the past year has been put before us,' and recommends, etc.

"Now, that will be a fact for the jury to pass on, whether they waived a strict compliance on the part of the deceased in that particular.

"Mr. Edmunds: The evidence shows she did not comply with any instruction given her, and set out in the report.

"The Court: The matter was brought to the attention of the Grand Lodge in that paper, and in that report he was commended."

For the reasons just stated, the motion for nonsuit was properly refused, and the exceptions raising this question are overruled.

The other exceptions are also overruled, for the reason that they do not assign any prejudicial error.

Judgment affirmed.

MR. JUSTICE WATTS, *disqualified.*